UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x
IN RE: :
 :
 : Case No.
APPLICATION UNDER 28 U.S.C. § 1782 TO TAKE :
DISCOVERY FROM GOLDMAN SACHS & CO. LLC., :
UBS FINANCIAL SERVICES INC., MORGAN STANLEY :
& CO. LLC, BNP PARIBAS USA, INC., SOTHEBY'S, INC., :
CHRISTIE'S INC., AND PHILLIPS AUCTIONEERS LLC :
---------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Paul Cossu
Maya Katalan
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036

*Attorneys for Applicant*
*Emmanuelle Corinne Traks*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ..............................................................................................................1

STATEMENT OF FACTS .................................................................................................3

    A. The Parties .............................................................................................................3

    B. The Marriage and Its Dissolution .........................................................................3

    C. Marital Assets and Art Collection.........................................................................4

    D. Mr. Gutman's Actions to Hide, Transfer, and Withhold Marital Assets.............4

    E. Applicant's Investigation and the Foreign Proceeding.........................................5

ARGUMENT ......................................................................................................................6

    I. LEGAL STANDARDS ........................................................................................6

    II. THE APPLICATION MEETS EACH OF THE STATUTORY REQUIREMENTS FOR DISCOVERY....................................................................7

        A. The Discovery Subjects Reside or Are Found in New York ..........................7

        B. The Requested Discovery is For Use in the Foreign Proceeding ..................9

        C. The Applicant is an Interested Person ............................................................9

    III. THE COURT SHOULD GRANT THIS APPLICATION UNDER THE DISCRETIONARY *INTEL* FACTORS ............................................................10

        A. The Discovery Subjects are Not Participants in the Foreign Proceeding ....10

        B. The Belgian Court Presiding Over the Foreign Proceeding Would be Receptive to Materials Produced Pursuant to Section 1782 .............................11

        C. The Applicant Does Not Attempt to Circumvent Foreign Evidentiary Restrictions...12

        D. The Discovery Sought is Targeted and Based on Evidence .........................13

    IV. THE COURT SHOULD GRANT APPLICANT'S REQUEST EX PARTE...................14

CONCLUSION.................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Application of Malev Hungarian Airlines,*
    964 F.2d 97 (2d Cir. 1992) ...................................................................................10, 13

*In re Application of Sveaas,*
    249 F.R.D. 96 (S.D.N.Y. 2008) ..............................................................................10, 13

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
    673 F.3d 76 (2d Cir. 2012) ............................................................................................9

*In re Catalyst Managerial Svcs., DMCC,*
    680 F.App'x 37 (2d Cir. 2017) ....................................................................................10

*In re del Valle Ruiz,*
    939 F.3d 520 (2d Cir. 2019) ..........................................................................................7

*In re Edelman,*
    295 F.3d 171 (2d Cir. 2002) ..........................................................................................7

*In re Eurasian Bank JSC,*
    No. 19-MC-00568 (RA), 2020 WL 85226 (S.D.N.Y. Jan. 2, 2020) .............................8

*Euromepa, S.A. v. R. Esmerian, Inc.,*
    154 F.3d 24 (2d Cir. 1998) ............................................................................................9

*Euromepa, S.A. v. R. Esmerian, Inc.,*
    51 F.3d 1095 (2d Cir. 1995) ........................................................................................11

*In re First Monolith Inc.,*
    No. 20 MISC. 735 (AT), 2021 WL 1093658 (S.D.N.Y. Feb. 1, 2021) .......................8

*Ibiuna Credito Gestao de Recursos Ltda v. Goldman Sachs Grp. Inc.,*
    No. 24-MC-13 (JGK), 2024 WL 1076940 (S.D.N.Y. Mar. 11, 2024) .........................8

*IJK Palm LLC v. Anholt Servs. USA, Inc.,*
    33 F.4th 669 (2d Cir. 2022) ..........................................................................................7

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241 (2004) .............................................................................................passim

*In re JSC BTA Bank,*
    577 F.Supp.3d 262 (S.D.N.Y. 2021) ...........................................................................14

*In re Lane*,
    No. 22 MISC. 34 (LGS), 2022 WL 16737132 (S.D.N.Y. Nov. 7, 2022) ................................. 8

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ....................................................................... 6, 11, 12, 13

*In re Republic of Kazakhstan*,
    No. 23-MC-283 (ER), 2023 WL 8373070 (S.D.N.Y. Dec. 4, 2023) ....................................... 11

*In re Servicio Pan Americano*,
    354 F.Supp.2d 269 (S.D.N.Y. 2004) ................................................................... 12

## STATUTES AND RULES

28 U.S.C. § 1782 .......................................................................................... *passim*

28 U.S.C. § 1782(a) ............................................................................................ 12

Applicant Emmanuelle Corinne Traks ("Applicant" or "Ms. Traks") respectfully submits this Memorandum of Law in support of her Application for judicial assistance pursuant to 28 U.S.C. § 1782 ("Section 1782") authorizing Applicant to serve Subpoenas *duces tecum* on Goldman Sachs & Co. LLC ("Goldman Sachs"), UBS Financial Services Inc. ("UBS"), Morgan Stanley & Co. LLC ("Morgan Stanley"), BNP Paribas USA, Inc. ("BNP"), Sotheby's, Inc. ("Sotheby's"), Christie's Inc. ("Christie's"), and Phillips Auctioneers LLC ("Phillips") (collectively, the "Discovery Subjects"). Applicant makes this request in an effort to obtain certain limited discovery in aid of a civil party criminal proceeding currently pending in the French-Speaking Court of First Instance of Brussels, Belgium (the "Foreign Proceeding").

This Application is supported by the points and authorities set forth below, together with the Declaration of Michaël Verhaeghe ("Verhaeghe Decl.") and the Declaration of Paul Cossu ("Cossu Decl."). The Proposed Order and Subpoenas *duces tecum* to be served on the Discovery Subjects are annexed as **Exhibits 1-8** to the Cossu Declaration.

## INTRODUCTION

Ms. Traks brings this Application pursuant to Section 1782 to obtain limited discovery from certain Manhattan-based financial institutions and auction houses in aid of Applicant's claims pending in Brussels, Belgium. In October 2024, Applicant initiated the Foreign Proceeding to prosecute a scheme of money laundering and conversion by her former husband, Michael Gutman ("Mr. Gutman") and to recover assets that are rightly owned by Applicant but were misappropriated, concealed, and/or transferred by Mr. Gutman in connection with his divorce from Ms. Traks and his refusal to comply with the settlement agreement (the "Settlement") that they reached in dissolving their marriage.

Applicant's civil party criminal claim turns, in part, on the details of numerous covert transfers and illicit transactions Mr. Gutman made through a network of bank accounts and art

1

world dealings, which Mr. Gutman employed to hide and withhold assets that are rightly owned by Applicant under the Settlement. Mr. Gutman used banks and auction houses, both in this District and around the world, to diminish Ms. Traks' share of their Settlement and to misappropriate assets that rightly belong to her.

This Application meets all statutory and discretionary requirements under Section 1782. Applicant satisfies the threshold statutory requirements set forth by the Supreme Court in evaluating Section 1782 applications: (1) the Discovery Subjects are "found" in this District, where they are headquartered and regularly do business; (2) the materials that Applicant seeks are "for use in the foreign proceeding," given the importance to the Foreign Proceeding of identifying account transfers and auction house transactions involving artworks belonging to Ms. Traks, either jointly prior to the divorce or solely following the Settlement; and (3) Applicant is an "interested person" in the Foreign Proceedings.

Likewise, each of the discretionary factors identified by the Supreme Court in the *Intel* decision weighs in favor of granting the discovery Ms. Traks seeks. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004). Namely: (1) the Discovery Subjects are not participants in the Foreign Proceeding; (2) the Belgian Court presiding over the Foreign Proceeding would be receptive to the discovery materials sought; (3) Applicant does not attempt to circumvent any foreign evidentiary restrictions in her request; and (4) the Application is targeted and seeks only information and documents related to U.S.-based transactions made by Mr. Gutman relevant to the Foreign Proceeding based on the evidence already uncovered.

Accordingly, and as set forth in greater detail below, Applicant respectfully requests that this Court grant her Application authorizing service of the Subpoenas on the Discovery Subjects.

## STATEMENT OF FACTS

### A. The Parties

Emmanuelle Corrine Traks is an individual of Belgian birth who presently resides in Barcelona, Spain. Ms. Traks was married to Michael Gutman for approximately 32 years until their divorce, which became final in February 2020. (Verhaeghe Decl., ¶¶ 7-9.) Ms. Traks is a civil party claimant in the Foreign Proceeding. (*Id.*, ¶ 3.)

Goldman Sachs, UBS, Morgan Stanley, and BNP are financial institutions where Mr. Gutman maintains bank accounts, either individually or jointly with Ms. Traks. (Verhaeghe Decl., ¶¶ 12.) Each of these banks is headquartered and/or regularly does business in this District. (Cossu Decl., ¶¶ 6-10.) Sotheby's, Christie's, and Phillips are auction houses where Mr. Gutman and Ms. Traks regularly purchased and sold artworks. (Verhaeghe Decl., ¶ 14.) Each of these auction houses is headquartered and regularly does business in this District. (Cossu Decl., ¶¶ 11-13.)

### B. The Marriage and Its Dissolution

Ms. Traks and Mr. Gutman were married under the Belgian legal regime of "community of property" for more than thirty years. (Verhaeghe Decl., ¶¶ 8-9.) In August or September of 2018, Mr. Gutman first informed Ms. Traks that he wanted a divorce and proceeded to file for divorce on April 4, 2019. (*Id.*) The divorce was granted in November 2019 by judgment of the French-speaking Family Court of Brussels and became final in February 2020. (*Id.*) The marriage was thus dissolved after approximately 32 years, during which it had been subject to the community property regime under Belgian law.

On July 7, 2021, Ms. Traks and Mr. Gutman entered into the Settlement, through which they settled the division of their property rights and reached a global and final agreement following

3

their divorce. (Verhaeghe Decl., ¶ 10.) The Settlement was subsequently incorporated and completed in a notarial deed. (*Id.*)[1]

C. **Marital Assets and Art Collection**

Throughout the course of her marriage to Mr. Gutman, Ms. Traks had little to no knowledge of the couple's financial affairs and banking arrangements. Mr. Gutman handled all financial matters. (Verhaeghe Decl., ¶ 11.) Mr. Gutman held, and still holds, numerous bank accounts in Belgium and abroad, both jointly with Ms. Traks and individually. Among these are accounts with Goldman Sachs, UBS, Morgan Stanley, and BNP. (*Id.*) Mr. Gutman also established several off-shore companies: Chelfield Properties Inc. (Panama); Camelia International Ltd. (the Bahamas); Pinley Investors Inc. (Panama); KILGard Group Inc. (Panama); Wayland Properties S.A. (Panama); and Columbus Shipping Ltd. (Malta). (*Id*, ¶ 13.)

The couple amassed a substantial art collection during their marriage, which was spurred in large part by Ms. Traks' knowledge of and passion for the arts. (Verhaeghe Decl., ¶ 14.) They acquired and sold artworks through numerous international art galleries, dealers, as well as the major auction houses. (*Id.*) As such, the couple has transacted with Sotheby's, Christie's, and Phillips auction houses in New York. (*Id.*) Artworks were often purchased under Mr. Gutman's name, and were sometimes purchased under different names, or through Mr. Gutman's offshore companies. (*Id*, ¶ 15.)

D. **Mr. Gutman's Actions to Hide, Transfer, and Withhold Marital Assets**

The Foreign Proceeding arises from acts of money laundering and conversion committed by Mr. Gutman in Belgium and abroad. (Verhaeghe Decl., ¶ 16.) Specifically, Ms. Traks believes

---

[1] Redacted copies of the Settlement and Deed—removing irrelevant, confidential information—are included as Exhibits 2 and 3, respectively, to the Verhaeghe Declaration. However, unredacted copies can filed under seal if they would be helpful to the Court in its analysis.

4

that Mr. Gutman (i) stole several artworks that were allocated exclusively to Ms. Traks under the Settlement following their divorce; and (ii) hid, transferred, and concealed several artworks that were marital property jointly belonging to the couple during their marriage, thereby wrongfully withholding them from being accounted for and divided in the Settlement. (*Id.*, ¶ 17.) These acts form the basis of the Foreign Proceeding.

To date, Mr. Gutman has failed to comply with the Settlement. Ms. Traks has not received artworks to which she is entitled under the Settlement, despite making repeated requests of Mr. Gutman to relinquish the property that is rightfully hers in compliance with their Settlement. (Verhaeghe Decl., ¶ 18.) Mr. Gutman also made statements suggesting his intention to transfer and conceal artworks from Ms. Traks, stating during the course of their settlement negotiations that he would not have in his possession any of the artworks belonging to Ms. Traks and that he would not know their whereabouts. (*Id.*, ¶ 19.) Such statements directly contradict the signed and executed Settlement. (*Id.*)

### E. Applicant's Investigation and the Foreign Proceeding

Mr. Gutman's statements and conduct raised serious concerns for Ms. Traks that he would not comply with his obligations under the Settlement – thus, Ms. Traks began to undertake efforts to locate property that she believed she was legally entitled to under the Settlement. (Verhaeghe Decl., ¶ 20.) Ms. Traks' concerns were confirmed in 2024, when she was copied on an email from Phillips auction house that was directed to Mr. Gutman advising him that no less than seven artworks that were purchased under his account during his marriage to Ms. Traks remained in Phillips' possession and needed to be collected. (*Id.*, ¶ 21). Ms. Traks has uncovered varied evidence illustrating Mr. Gutman's pattern of illicit transfers, concealment, and misappropriation of marital property owed to her under the Settlement. (*Id.*, ¶ 22). In connection with the Foreign Proceeding, Ms. Traks and her Belgian counsel have conducted an investigation into the status of

5

the artworks acquired by the couple during their marriage and owed to Ms. Traks under the Settlement, which has confirmed that significant portions of the couple's art collection appear to have been wrongfully concealed or surreptitiously removed. (*Id.*) As such, Ms. Traks initiated the Foreign Proceeding on October 3, 2024, when she lodged a civil party criminal claim against Mr. Gutman relating to acts of money laundering and theft. (*Id.*, ¶¶ 24-26).

## ARGUMENT

**I.    LEGAL STANDARDS**

Section 1782 of Title 28 of the United States Code permits federal district courts to grant discovery for use in a pending foreign proceeding. *See Intel Corp.*, 542 U.S. at 249. The statute provides, in relevant part, that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other things for use in a proceeding in a foreign or international tribunal ... The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782.

A district court has authority to grant an application under Section 1782 where "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (citation and quotations omitted).

If the three statutory requirements are met, courts next consider four discretionary factors in deciding whether to grant a Section 1782 application, as delineated by the Supreme Court in *Intel*: (1) whether the person from whom the discovery is sought is a participant in the foreign

proceeding; (2) the nature of the foreign tribunal, the character of the proceedings abroad and the receptivity of the foreign government, court or agency to U.S. federal-court judicial assistance; (3) whether the Section 1782 application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request for discovery is unduly intrusive or burdensome. *See Intel Corp.*, 542 U.S. at 264-66. The Supreme Court and the Second Circuit both acknowledge that Congress intended to provide a liberal avenue to discovery in aid of foreign proceedings. *See id.* at 247-48; *see also In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly…").

## II. THE APPLICATION MEETS EACH OF THE STATUTORY REQUIREMENTS FOR DISCOVERY

A district court is authorized to grant an application pursuant to Section 1782 where an applicant satisfies the following statutory requirements: (1) the party from whom discovery is sought resides or is found in the district where the application is made; (2) the discovery is intended "for use" in a foreign proceeding; and (3) the application is made by an "interested person" in the foreign proceeding. *IJK Palm LLC v. Anholt Servs. USA, Inc*., 33 F.4th 669, 675 (2d Cir. 2022). The instant Application meets all of these statutory requirements.

### A. The Discovery Subjects Reside or Are Found in New York

All of the Discovery Subjects reside or are found in New York. The courts apply a "flexible reading of the phrase 'resides or is found'" given that neither term is defined by the statute. *In re Edelman*, 295 F.3d at 178. The Second Circuit has "repeatedly recognized Congress's intent that Section 1782 be 'interpreted broadly'" and held that the "statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019) (internal citations omitted).

The Discovery Subjects reside or are found in the Southern District of New York, as all are registered to do business in New York, and maintain physical offices in New York County where they operate their businesses. Courts in this District have routinely granted 1782 applications on the financial institutions named as Discovery Subjects based on their presence in the Southern District of New York. *See, e.g.*, *In re Lane*, No. 22 MISC. 34 (LGS), 2022 WL 16737132 (S.D.N.Y. Nov. 7, 2022) (granting 1782 application for discovery from Morgan Stanley); *Ibiuna Credito Gestao de Recursos Ltda v. Goldman Sachs Grp. Inc.*, No. 24-MC-13 (JGK), 2024 WL 1076940 (S.D.N.Y. Mar. 11, 2024) (granting 1782 application for discovery from Goldman Sachs corporate entity); *In re Eurasian Bank JSC*, No. 19-MC-00568 (RA), 2020 WL 85226 (S.D.N.Y. Jan. 2, 2020) (granting 1782 application for discovery from UBS); *In re First Monolith Inc.*, No. 20 MISC. 735 (AT), 2021 WL 1093658 (S.D.N.Y. Feb. 1, 2021) (granting 1782 application for discovery from BNP).

Goldman Sachs is headquartered in New York, with its principal executive offices located at 200 West Street, New York, NY 10282. (Cossu Decl., ¶ 7.) UBS is located in New York County, with its New York headquarters branch located at 1285 Avenue of the Americas, New York, NY 10019. (*Id.*, ¶ 8.) Morgan Stanley is headquartered in New York, with its principal executive offices located at 1585 Broadway, New York, NY 10036. (*Id.*, ¶ 9.) BNP is located in New York County, with its New York headquarters branch located at 787 Seventh Avenue, New York, NY 10019. (*Id.*, ¶ 10.) Accordingly, the Discovery Subject banks reside and are found in this District.

Likewise, the auction houses named as Discovery Subjects reside and are found in this District. Sotheby's is incorporated in the State of New York with its principal executive offices at 1334 York Avenue, New York, NY 10021. (Cossu Decl., ¶ 11.) Christie's is incorporated in the State of New York with its principal executive offices located at 20 Rockefeller Plaza, New York,

NY 10020. (*Id.*, ¶ 12.) And lastly, Phillips is a limited liability company that is registered to do business in New York and located in New York County, where it maintains its global headquarters at 432 Park Avenue, New York, NY 10022. (*Id.*, ¶ 13.) Accordingly, the Discovery Subject auction houses also reside and are found in this District.

### B. The Requested Discovery is For Use in the Foreign Proceeding

The requested discovery is for use in a foreign proceeding currently pending in the French-Speaking Court of First Instance of Brussels, Belgium. The "for use in a proceeding in a foreign or international tribunal" factor turns on (1) whether there is actually a foreign proceeding; and (2) whether the foreign proceeding is adjudicative in nature. *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). Here, the Foreign Proceeding is plainly an adjudicative, judicial proceeding pending before an Examining Magistrate in the Belgian Court of First Instance. The materials sought in discovery will be used in the Foreign Proceeding because the information in them is likely to bear on key facts at issue in the criminal claims lodged against Mr. Gutman. As set forth in the Declaration of Michaël Verhaeghe, the Applicant's Belgian counsel, the materials from the Discovery Subjects will be utilized as evidence in aid of the Court's investigation on the criminal claims that give rise to the Foreign Proceeding.

### C. The Applicant is an Interested Person

As the civil party claimant who initiated the Foreign Proceeding, the Applicant is by definition an "interested person" within the meaning of Section 1782. *See Intel Corp.*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782 . . ."). Accordingly, Applicant meets the third statutory requirement.

## III. THE COURT SHOULD GRANT THIS APPLICATION UNDER THE DISCRETIONARY *INTEL* FACTORS

Where, as here, an application satisfies the statutory requirements, courts then consider the four discretionary factors set forth by the Supreme Court in *Intel* in determining whether to grant the application. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012). In considering these factors, a court should keep in mind the twin aims of the Section 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992). Here, each of these factors weighs in favor of granting the requested discovery.

### A. The Discovery Subjects are Not Participants in the Foreign Proceeding

The first discretionary factor weighs in favor of granting the requests because none of the Discovery Subjects is a party to the Foreign Proceeding. The Supreme Court has recognized that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence their evidence, available in the United States, may be unobtainable absent [28 U.S.C.] § 1782(a)." *Intel Corp.*, 542 U.S. at 264; *see also In re Application of Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (finding a respondent's "status as a non-party in the foreign actions weighs in favor of granting [the] application.").

This Application is the only mechanism available to Ms. Traks to obtain information from the Discovery Subjects, whose records concerning Mr. Gutman's unauthorized transfers and transactions would be maintained in New York. In any event, the Second Circuit has "rejected the requirement that an applicant must first seek discovery abroad before bringing a § 1782 petition." *In re Catalyst Managerial Svcs., DMCC*, 680 F.App'x 37, 41 (2d Cir. 2017). The first *Intel* factor thus weighs in favor of granting the Application.

### B. The Belgian Court Presiding Over the Foreign Proceeding Would be Receptive to Materials Produced Pursuant to Section 1782

The second *Intel* factor also supports granting Applicant's request. Under the second *Intel* factor, a court considering a Section 1782 request looks to the nature of the foreign tribunal, the character of the proceedings abroad and the receptivity of the foreign government, court or agency to U.S. federal-court judicial assistance. *Intel Corp.*, 542 U.S. at 264-65. The Second Circuit has observed that courts may consider whether the "nature, attitude and procedures" of the foreign tribunal indicates its receptivity to Section 1782 assistance, even though that tribunal may not itself provide for a similar discovery mechanism. *Mees*, 793 F.3d at 303 n. 20 (internal citations omitted). There is a strong presumption that foreign tribunals will be receptive to evidence obtained in the United States. The Second Circuit has held that "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). A court should only deny discovery on the basis of lack of receptiveness where it is provided with "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id*. at 1100 (emphasis added).

Here, there is a reasonable basis to expect that the Belgian Court will be receptive to evidence produced through Section 1782 discovery in the United States, and certainly no "authoritative proof" that it would not. Applicant's Belgian counsel of record believes that the Court of First Instances in Brussels, Belgium will consider evidence of Mr. Gutman's bank transactions and auction house dealings as relevant to the criminal allegations against him, subject to the standard evidentiary rules guiding that Court, and has no reason to believe that the Court would reject evidence obtained pursuant to Section 1782. (Verhaeghe Decl., ¶¶ 29-30.) Indeed, courts have granted Section 1782 proceedings seeking discovery for use in Belgian judicial

proceedings. *See, e.g.*, *In re Republic of Kazakhstan*, No. 23-MC-283 (ER), 2023 WL 8373070 (S.D.N.Y. Dec. 4, 2023) (granting 1782 application in connection with ongoing civil proceedings in Belgium). Thus, the second *Intel* factor weighs in favor of granting Applicant's request.

C. **The Applicant Does Not Attempt to Circumvent Foreign Evidentiary Restrictions**

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. at 265. In the Second Circuit, there is no requirement that an applicant seeking discovery under Section 1782 first attempt to obtain the requested materials from the foreign tribunal. *Mees*, 793 F.3d at 303 (Section 1728 "contains no foreign-discoverability requirement."). Nor must an applicant wait until the evidentiary stage of the foreign proceeding to seek discovery under Section 1782. *In re Servicio Pan Americano*, 354 F.Supp.2d 269, 274 (S.D.N.Y. 2004) ("Section 1782 may be invoked even where foreign legal proceedings are not even underway…").

Here, the Application does not attempt to circumvent any proof-gathering restriction or public policy in the Foreign Proceeding. (Verhaeghe Decl., ¶¶ 29-30.) Rather, the Applicant invokes Section 1782 in good faith to obtain highly relevant evidence for use in a pending criminal proceeding in Belgium. (*Id.* at ¶¶ 27-30; Cossu Decl., ¶ 2.) Documents and information that may be maintained by the Discovery Subjects located in this District are not only relevant, but essential, to Applicant's civil party criminal action in Belgium. Ms. Traks has initiated the Foreign Proceeding to enforce her rights under the Settlement. As demonstrated by the recent Phillips emails to Mr. Gutman (in which Ms. Traks was copied), Phillips has been holding multiple artworks that were purchased under Mr. Gutman's account during the marriage, and to which Ms. Traks has a claim under the Settlement. (Verhaeghe Decl., ¶ 21.) Indeed, without access to further

information possession by Phillips and the other Discovery Subjects concerning potentially significant bank transfers and covert auction purchases (or sales) involving assets subject to the Settlement with a connection to the Southern District of New York, the Belgian tribunal may be unable to definitively investigate and adjudicate the criminal claims against Mr. Gutman, including by being unable to make a fully-informed determination as to property and funds that should be awarded to Ms. Traks. Applicant's intention in seeking Section 1782 discovery here is precisely aligned with Congress' goals in enacting Section 1782: "[T]o assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws[.]" *Intel Corp.*, 542 U.S. at 262.

### D. The Discovery Sought is Targeted and Based on Evidence

The fourth *Intel* factor likewise favors granting the Application. This factor looks to whether the discovery requests are "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 265. Like all federal discovery, the proper scope of discovery under Section 1782 is governed by Federal Rule of Civil Procedure 26(b). *Mees*, 793 F.3d at 302; *In re 28 U.S.C. 1782*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008). Accordingly, district courts retain "broad authority" under Rule 26 to fashion discovery orders issued pursuant to section 1782. *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 102 (2d Cir. 1992). Here, Applicant's discovery requests are narrowly tailored to include only documents relevant to the Foreign Proceeding (*i.e.*, banking and art transactions that took place during the time of Ms. Trak's and Mr. Gutman's marriage). Although the details of Mr. Gutman's scheme are not yet fully known to Applicant, the discovery sought is appropriately focused on the entities and transfers that Applicant has identified through her investigation to-date. The universe of documents and information sought from the Discovery Subjects is therefore not burdensome and falls well within the broad scope of discovery permitted under the Federal Rules. Accordingly, Applicant satisfies the fourth *Intel* factor.

## IV. THE COURT SHOULD GRANT APPLICANT'S REQUEST *EX PARTE*

The Court should grant the Application *ex parte* because doing so would cause no prejudice to the Discovery Subjects as a matter of law. "Because the respondents will have the opportunity to challenge [the] subpoena[] once served (including but not limited to a challenge as to whether section 1782 assistance should be afforded at all)" courts frequently grant Section 1782 requests *ex parte. In re JSC BTA Bank*, 577 F.Supp.3d 262, 268 (S.D.N.Y. 2021). Here, the Discovery Subjects would not be prejudiced by the Court granting the Application *ex parte* because the Discovery Subjects would have the opportunity to challenge the Subpoenas after service. Applicant will provide notice to Mr. Gutman by effecting service of as-filed copies of the instant Application upon Mr. Gutman, and will file a Declaration notifying the Court when service has been effected on Mr. Gutman.

## **CONCLUSION**

For the foregoing reasons, Applicant respectfully requests that the Court (a) grant the Application; (b) enter the Proposed Order attached to the Cossu Declaration as Exhibit 8; (c) order that Applicant may proceed *ex parte*; (d) authorize Applicant, pursuant to 28 U.S.C. § 1782, to serve the Subpoenas attached to the Cossu Declaration as Exhibits 1-7; and (e) grant such other and further relief as this Court may deem just and proper.

Dated: New York, New York
December 30, 2024

Respectfully submitted,

**PRYOR CASHMAN LLP**

By : _____
Paul Cossu
Maya Katalan

7 Times Square
New York, New York 10036
Tel. (212) 421-4100
Fax. (212) 326-0806
pcossu@pryorcashman.com
mkatalan@pryorcashman.com

*Attorneys for Applicant*